**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA**

    **v.**           **5:08-CR-184**
                **(FJS)**
**RICHARD R. MURTAUGH, JEWELL**
**(KIDDER) GILBERT, and KAYE MASON,**

       **Defendants.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OFFICE OF THE UNITED** | **STEVEN D. CLYMER, AUSA** |
| **STATES ATTORNEY** | |
| James Hanley U.S. Courthouse | |
| & Federal Building | |
| 100 South Clinton Street | |
| P.O. Box 7198 | |
| Syracuse, New York 13261-7198 | |
| Attorneys for the United States | |
| | |
| **OFFICE OF KEVIN E. MCCORMACK** | **KEVIN E. MCCORMACK, ESQ.** |
| 333 East Onondaga Street, Suite 301 | |
| Syracuse, New York 13202 | |
| Attorneys for Defendant Murtaugh | |
| | |
| **TISDELL & MOORE** | **ROBERT L. TISDELL, ESQ.** |
| University Building, Suite 615 | |
| 120 East Washington Street | |
| Syracuse, New York 13202 | |
| Attorneys for Defendant Murtaugh | |
| | |
| **OFFICE OF ROBERT G. WELLS** | **ROBERT G. WELLS, ESQ.** |
| University Building, Suite 825 | |
| 120 East Washington Street | |
| Syracuse, New York 13202 | |
| Attorneys for Defendant Gilbert | |

**OFFICE OF KENNETH M. MOYNIHAN**       **KENNETH M. MOYNIHAN, ESQ.**
University Building, Suite 927
120 East Washington Street
Syracuse, New York 13202
Attorneys for Defendant Mason

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Defendants Gilbert's and Mason's motions for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and Defendants Murtaugh's, Gilbert's and Mason's motions for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

### II. BACKGROUND

The Court conducted an eight-day jury trial in this matter from January 29, 2009, to February 10, 2009. At the conclusion of the parties' proof, the jury found Defendant Murtaugh guilty of six counts of filing false federal income tax returns, 26 U.S.C. § 7206(1), and tax evasion, 26 U.S.C. § 7201, with respect to his individual and Subchapter S corporation income tax returns for the years 2003 (Counts Six, Seven, and Eight) and 2004 (Counts Nine, Ten, and Eleven). The jury acquitted Defendant Murtaugh of six counts of filing false federal income tax returns, 26 U.S.C. § 7206(1), and tax evasion, 26 U.S.C. § 7201, with respect to his individual and Subchapter S corporation income tax returns for the years 2001 (Counts One, Two, and Three) and 2002 (Counts Four, Five, and Six). The jury also found Defendant Gilbert guilty of giving false testimony before the grand jury under oath knowing that her testimony was false as

to a material matter (Count 13) and found Defendant Mason guilty of giving false testimony

before the grand jury under oath knowing that her testimony was false as to a material matter

(Count 14).

## III. DISCUSSION

**A.     Standards of review**

### *1. Judgment of acquittal*

Rule 29 of the Federal Rules of Criminal Procedure provides that "the court on the

defendant's motion must enter a judgment of acquittal of any offense for which the evidence is

insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  In deciding a defendant's motion for

a judgment of acquittal, the court must determine "'whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt.'" *United States v. Espaillet*, 380 F.3d 713, 718

(2d Cir. 2004) (quotation omitted).  This requires the court to consider the evidence in its

entirety, not piecemeal.  *See United States v. Cassese*, 428 F.3d 92, 98-99 (2d Cir. 2005) (citation

omitted).

### *2. New trial*

Rule 33 of the Federal Rules of Criminal Procedure provides that "the court may vacate

any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

Only in exceptional circumstances may a court set aside a jury verdict; for instance, where

testimony is "patently incredible or defies physical realities . . . ." *United States v. Sanchez*, 969

F.2d 1409, 1414 (2d Cir. 1992) (citations omitted).  "Generally, the trial court has broader

discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29,

but it nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary

circumstances.'"  *United States v. Sacco*, No. 08-CR-77, 2008 WL 2915430, *1 (N.D.N.Y. July

24, 2008) (quoting *Sanchez*, 969 F.2d at 1414).  Finally, in exercising its discretion, "the court

may weigh the evidence and credibility of witnesses. . . . [However,] the court may not wholly

usurp the jury's role: 'It is only where exceptional circumstances can be demonstrated that the

trial judge may intrude upon the jury function of credibility assessment.'"  *United States v. Cote*,

544 F.3d 88, 101 (2d Cir. 2008) (internal citation and quotation omitted).


**B.      Motions for judgment of acquittal**

To prove the perjury charges against Defendant Gilbert and Defendant Mason, the

Government had to establish each of the following elements beyond a reasonable doubt: (1) that

they gave their testimony before the grand jury while they were under oath; (2) that their

testimony, as set forth in the Indictment, was false; (3) that the matters about which they

allegedly gave false testimony were material to the issues under inquiry by the grand jury; and (4)

that they gave such false testimony knowingly.

"'A perjury conviction must rest on the utterance by the accused of a false statement; it

may not stand on a particular interpretation that a questioner places upon an answer.'"  *United

States v. Fish*, No. 05-CR-228A, 2006 WL 3746691, *6 (W.D.N.Y. May 2, 2006) (quoting

*United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986)).  Therefore, "'an individual cannot be

convicted of perjury for an answer given under oath that is literally true, even if it is unresponsive

-4-

and intended to mislead.'" *Id.* (quoting *United States v. Carey*, 152 F. Supp. 2d 415, 423-24 (S.D.N.Y. 2001)).  Furthermore, "'[w]hether an answer is literally true raises a factual question to be resolved by a jury.'" *Id.* at *7 (quoting *Lighte*, 782 F.2d at 373).  However, in limited circumstances, "the court may make this determination . . . where 'there can be no doubt that [the defendant's] answers were literally true under any conceivable interpretation of the questions.'" *United States v. Carey*, 152 F. Supp. 2d 415, 424 (S.D.N.Y. 2001) (quotation omitted).

Moreover, "[p]erjury requires that a witness believe that the testimony [s]he gives is false. Thus, whether the witness believes that an answer is true or false generally turns on the declarant's understanding of the question.  A jury is best equipped to determine the meaning that a defendant assigns to a specific question." *United States v. Lighte*, 782 F.2d 367, 372 (2d Cir. 1986) (citations omitted).  "How a defendant interprets a question obviously is not viewed subjectively, as that would compel the jury to accept as conclusive the meaning a defendant alleges [s]he gave to the stated question, and no perjury prosecutions would ever result in convictions." *Id.* (citation omitted).  Rather, the test is objective – "[t]he jury should determine whether the question – as the declarant must have understood it, giving it a reasonable reading – was falsely answered." *Id.*  As the *Lighte* court explained, "[i]f the jury has been properly charged that it cannot convict the declarant if [s]he made a false statement by mistake or inadvertence, and that an answer is knowingly false 'only if it was untrue when made and known to be untrue by the individual making it,' then a reviewing court will not disturb the jury's determination." *Id.* at 372-73 (quotation omitted).  Furthermore, when deciding what meaning a declarant gave to a question, "the jury need not examine isolated segments of the question and answer exchange, but may view it within the context of the entire line of questioning. . . . The

jury may also consider extrinsic evidence that demonstrates how a declarant interpreted a question. . . ." *Id.* at 373 (internal citations omitted).

Finally, "'[w]hen a line of questioning is so vague as to be fundamentally ambiguous, the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction.'" *Fish*, 2006 WL 3746691, at *7 (quoting *Lighte*, 782 F.2d at 375). "'A question is fundamentally ambiguous when it is not a phrase with a meaning about which [people] of ordinary intellect could agree, nor one which could be used with mutual understanding by a questioner and answerer unless it were defined at the time it were sought and offered as testimony.'" *Id.* (quotation omitted). However, "[a]mbiguity in questioning may not be established by isolating a statement from context to give it a meaning entirely different from that which it has when the testimony is considered as a whole. . . . In other words, the fact that the words used in the questions have different meanings in different situations does not make them fundamentally ambiguous. . . ." *Id.* (internal citations omitted).


### *1. Defendant Gilbert's motion*

As noted, Defendant Gilbert was charged and convicted of willfully giving false testimony before the grand jury under oath knowing that her testimony was false as to a material matter. The Indictment alleged that, at the time that Defendant Gilbert testified before the grand jury, the grand jury was investigating whether Defendant Murtaugh had committed tax evasion and tax fraud. Furthermore, the Indictment alleged that "[i]t was material to that investigation whether, in 2001 through 2004 [D]efendant Murtaugh had personally deposited rental checks from Renaissance Minerals and Great Lakes Cheese of New York, Inc. – both of which were

tenants of Murtaugh Recycling on property in Pierrepont Manor, New York – into his personal

money market bank account at a bank in Cicero, New York" and that Defendant Gilbert

knowingly made materially false statements regarding this issue.

Before the grand jury, Defendant Gilbert testified, in relevant part, as follows:

Q:      Was there a company called Renaissance Minerals who
        paid rent to the business back in 2001 to 2004?

A:      Yes.

Q:      Was there a company called Great Lakes Cheese?

A:      Yes.

Q:      Did both of those businesses rent property at Pierrepont
        Manor and pay rent checks to the Murtaugh Recycling
        Business?

A:      Yes.

* * * * * * * * * *

Q:      What sort of things did you do in connection with these
        businesses?  Could you describe them for us?

A:      They would send the checks, **and I would deposit them.**
        [Statement #1]

Q:      When you say you would deposit them, did you go
        personally to the bank with them?

A:      **Yes.**  [Statement #2]

* * * * * * * * * *

Q:      Which bank accounts did you deposit the checks into?

A:      **Both.**  [Statement #3]

Q:      Why did you deposit some checks in one and some checks

-7-

in others?

A:     **Depending on which checks went to his and which went to the business.**  [Statement #4]

\* \* \* \* \* \* \* \* \*

Q:     What about checks from the tenants at Pierrepont Manor?

A:     At first they were going in the business account, **and then I started putting them in his personal account to pay back the money that was owed to him for putting in the road and such.**  [Statement #5]

Q:     Isn't it true your father [Defendant Murtaugh] almost always made the deposits at the bank?

A:     **It's not true.  He is not usually there.**  [Statement #6]

\* \* \* \* \* \* \* \* \*

Q:     Is it your testimony that your father had nothing to do with your decision to stop depositing some of the checks into the business account and start depositing them on the personal account?

A:     On that what we just discussed, **that was something I had did.**  [Statement #7]

Q:     When you say that's something you did, you mean with respect to the tenants at Pierrepont Manor?

A:     **Correct.**  [Statement #8]

Q:     You started to change the way you deposited money into your father's personal account without your father's permission or knowledge; is that your testimony?

A:     **Yes.**  [Statement #9]

With respect to these statements, the jury verdict form stated "we the jury find that

Defendant Gilbert knowingly made them, knowing them to be false and material to the matters

-8-

under consideration by the grand jury."  The jury answered in the affirmative with respect to

Statement #7 and Statement #9 and in the negative with respect to the remaining Statements and,

therefore, found Defendant Gilbert guilty of the crime charged in Count 13 of the Indictment.

Defendant Gilbert argues that, "[i]n what appears to be an impermissible compromise, the

jury wrongfully concluded, in the face of insufficient evidence, that the . . . two specified

Statements #7 and #9 were knowingly false and material."  *See* Plaintiff Gilbert's Memorandum

of Points and Authorities at ¶ 6.  Furthermore, she asserts that, "what small and weak amount of

evidence the government presented, especially due to the confusing, ambiguous and imprecise

nature of the questions, was as consistent with innocence as with guilt, and cannot support a

conviction."  *See id.* at ¶ 8.

In addition, Defendant Gilbert contends that "the two questions as posed were

irresolvably imprecise and ambiguous, without sufficient context, time frame or surrounding

facts to permit any clear definitive answer amounting to perjury."  *See id.* at ¶ 19.  She further

claims that "[t]he questions and answers are confusing as a matter of simple English when read

fairly.  The answers may not even be responsive when read together with the questions.  *See id.* at

¶ 20.

Moreover, Defendant Gilbert argues that "[t]he grand jury excerpt admitted into evidence

on [her] behalf, especially pages 37 and 43 thereof, referred to by the defense as 'Who's On First',

shows the overall confusing tone of the examination of [her], reflects her state of mind, and

thereby lends further credence to the confusing nature of Questions #7 and #8 [sic] and that the

answers given by [her] were not perjurious."  *See id.* at ¶ 36.  Finally, Defendant Gilbert asserts

that, "[b]ased upon the lack of evidence and the ambiguous questions, there is no evidence upon

which a reasonable juror might fairly conclude [that her] answers were perjurious beyond a reasonable doubt." *See id.* at ¶ 43.

Although not entirely clear, it appears that the basis for Defendant Gilbert's motion is three-fold: (1) the jury's verdict acquitting her of making certain allegedly false statements while convicting her of making other allegedly false statements was the result of "an impermissible compromise," (2) the questions were imprecise and inherently ambiguous, and (3) her answers were literally true.

Despite Defendant Gilbert's argument to the contrary, there is nothing about the jury's verdict to indicate that it was the result of an impermissible compromise.  In fact, a review of the entire line of questioning demonstrates that the jury's verdict is internally consistent.  In other words, it was entirely reasonable for the jury to believe that Defendant Gilbert testified truthfully when she stated that she made some of the deposits herself, that she deposited some of the checks in the business account and some of the checks in Defendant Murtaugh's personal account, and about the reasons that she did so but that she testified falsely when she stated that she made the decision about which checks to put in which account without Defendant Murtaugh's knowledge. Therefore, the Court denies Defendant Gilbert's motion to the extent that it is based on her assertion that the jury's verdict was the result of an impermissible compromise.

With respect to Defendant Gilbert's assertion that the questions were "irresolvably imprecise and ambiguous," the record does not bear this out.  First, pages 37 through 43 of the grand jury transcript, upon which Defendant Gilbert relies, do not support her position. Defendant Gilbert refers to these pages as "Who's On First" and argues that they show the "overall confusing tone of the examination . . ., reflect[] her state of mind, and . . . lend[] further

credence to the confusing nature of [the] Questions . . . ."  *See* Defendant Gilbert's Memorandum

of Points and Authorities at ¶ 43.  To the contrary, what these pages indicate is that the

Government took great pains to make sure that, in reviewing certain deposit tickets, Defendant

Gilbert identified those which she believed bore her handwriting and those which she believed

bore the handwriting of others.  Furthermore, Defendant Gilbert does not explain how this

exchange about the deposit slips has any bearing on her later testimony about whether Defendant

Murtaugh was aware that she decided to change the manner in which she deposited the rent

checks, i.e., in which account she deposited those checks.

In addition, Defendant Gilbert has not indicated, other than in a conclusory manner, how

the questions at issue were in any way ambiguous, let alone inherently ambiguous.  Nor does she

state that she did not understand the questions.  Moreover, it is clear from reading the series of

questions and answers as a whole that, when it was unclear exactly what Defendant Gilbert's

testimony was, the Government asked a follow up question to make sure that she had an

opportunity to clarify any response that she had made.  Therefore, the Court denies Defendant

Gilbert's motion to the extent that it is based on her assertion that the questions were so

ambiguous that her responses could not have formed the basis for a perjury conviction.

Moreover, with respect to Defendant Gilbert's argument that her answers were literally

true, she points to nothing in the record to support this contention.  Nor does she indicate what it

was about her understanding of these questions that would justify finding that her answers were

literally true, even if misleading.  Moreover, Defendant Gilbert acknowledges that it is the jury

that must determine whether an answer is literally true; and, with respect to the answers that the

jury found to be false, she does not explain why she thinks the jury should have found those

answers literally true based on the evidence in the record.  Therefore, because there is no evidence to support Defendant Gilbert's contention that Statements #7 and #9 were literally true, the Court denies Defendant Gilbert's motion on this ground as well.

Finally, although Defendant Gilbert never mentions the word "credibility," this is, in essence, what is at issue.  On the one hand, Defendant Gilbert testified that she, at least on some occasions, deposited the Pierrepont Manor rent checks into both the business account and Defendant Murtaugh's personal account and that, without Defendant Murtaugh's knowledge, she made the decision to deposit most, if not all, of these checks into Defendant Murtaugh's personal account.  On the other hand, there was evidence that Defendant Murtaugh was the person who made the decision to deposit the Pierrepont Manor rent checks into his personal account rather than in the business account.  Faced with contradictory testimony, it was the jury's role to decide whose testimony to believe regarding these matters in light of all of the evidence in the record. Assuming that the jury decided to believe Defendant Murtaugh's testimony and the testimony of others regarding this issue, then it was entirely reasonable for the jury to decide that Defendant Gilbert willfully gave false statements to the grand jury regarding this same issue.  Moreover, given the totality of the evidence, it was reasonable for the jury to infer that Defendant Gilbert knew that her statements to the grand jury about these matters were false.

Accordingly, for all of the above-stated reasons, the Court **denies** Defendant Gilbert's motion for a judgment of acquittal.

### 2. Defendant Mason's motion

Defendant Mason was charged and convicted of willfully giving false testimony before

the grand jury under oath knowing that her testimony was false as to a material matter. The Indictment alleged that, at the time that Defendant Mason testified before the grand jury, the grand jury was investigating whether Defendant Murtaugh had committed tax evasion and tax fraud. Furthermore, the Indictment alleged that "[i]t was material to that investigation whether, in 2001 through 2004, [Defendant] Murtaugh had personally deposited checks from the sale of scrap metal and the rental of property into his personal money market bank account at a bank in Cicero, New York" and that Defendant Mason knowingly made false statements regarding this material issue.

Before the grand jury, Defendant Mason testified, in relevant part, as follows:

> Q:   During the time you have worked at Murtaugh Recycling, did you ever make deposits at a bank in Cicero, New York on behalf of the business?
>
> A:   Yes.
>
> * * * * * * * * * *
>
> Q:   When you didn't go to the bank, who would go to the bank?
>
> A:   **I have no idea.** [Statement #1]
>
> * * * * * * * * * *
>
> Q:   Is it in fact true that Mr. Murtaugh usually went to the bank, and you only filled in when he was taking care of other business matters or on vacation?
>
> A:   **No.** [Statement #2]
>
> Q:   Did you ever know of Mr. Murtaugh going to the bank to make a deposit?
>
> A:   **No.** [Statement #3]

With respect to these statements, the jury verdict form stated that "we the jury find that Defendant Mason knowingly made them, knowing them to be false and material to the matters under consideration by the grand jury[.]"  The jury answered "undecided" with respect to Statement #1, "No" with respect to Statement #2, and "Yes" with respect to Statement #3 and, therefore, found Defendant Mason guilty of the crime charged in Count 14 of the Indictment.

Defendant Mason asks the Court to review the evidence that the Government presented at trial "and find that no reasonable trier of fact could find that the [G]overnment has not [sic] proven each and every element of the perjury charge beyond a reasonable doubt." *See* Defendant Mason's Memorandum of Law at 2.

Defendant Mason acknowledges that "many of the witnesses throughout the trial testified that [Defendant] Murtaugh went to the bank in Cicero New York to make deposits.  The majority of these witnesses, bank employees, also testified that from some time in the middle of 2004 [Defendant] Mason also went to the bank in Cicero New York to make deposits and withdrawals on behalf of Murtaugh Recycling Corporation." *See id.* at 4.  However, Defendant Mason argues that none of these witnesses testified that they ever saw Defendant Murtaugh and her in the bank at the same time, and none of them had any knowledge about what she knew about Defendant Murtaugh's trips to the bank.  *See id.*

Furthermore, Defendant Mason contends that three witnesses – Ms. Delacruz, Defendant Murtaugh, and Special Agent Ewald – provided all the relevant testimony about the allegations of perjury.  According to Defendant Mason, Ms. Delacruz testified that Defendant Mason's primary responsibility in the office was to care for two young children and that at some point in the spring or summer of 2004 Defendant Mason began to run errands, including going to the

-14-

bank in Cicero, New York.  *See id.* at 4-5.  However, Defendant Mason states that "[t]here was

no testimony from Ms. Delacruz that [Defendant] Murtaugh, who often worked in this office,

ever discussed his comings and goings or business practices with [Defendant] Mason . . . [and,

thus,] Ms. Delacruz provided no testimony to establish that [Defendant] Mason knew that

[Defendant] Murtaugh went to the bank to make deposits."  *See id.* at 5.

With respect to Defendant Murtaugh's testimony, Defendant Mason contends that he

testified that he did not go to the bank with her and he did not discuss any of his business

activities, including his banking activities, with her.  *See id.*  Furthermore, with respect to Special

Agent Ewald's testimony, Defendant Mason claims that "Agent Ewald provided no testimony or

evidence about the falsity of [Defendant] Mason's answer . . . . Agent Ewald did not even testify

that [Defendant] Mason's answer to [the] question . . . before the grand jury was inconsistent with

the January, 2006 interview."  *See id.* at 7.

Finally, Defendant Mason argues that "[t]here is no direct evidence in the entirety of the

trial that the answer provided to [this] question . . . is false."  *See id.*  She further asserts that,

"[a]t best, the government offered evidence that [she] knew that [Defendant] Murtaugh is a

hands-on manager and perform [sic] many of the tasks of the business.  This does not even

provide circumstantial evidence that [she] provided a knowingly false and material statement in

regards to [this] question . . . ."  *See id.*

The sole basis for Defendant Mason's motion is that there was insufficient evidence from

which a reasonable jury could conclude that she ever knew that Defendant Murtaugh went to the

bank to make a deposit.  Although, as Defendant Mason notes, the Government's case against her

was primarily based on circumstantial evidence, this does not mean that there was insufficient

evidence to establish Defendant Mason's guilt beyond a reasonable doubt.  Furthermore, although there was conflicting evidence about what Defendant Mason did and did not know about Defendant Murtaugh's comings and goings, it was the jury's province to decide whose testimony to believe; and there was ample evidence from which the jury could infer that Defendant Mason did, in fact, know, on at least one occasion, that Defendant Murtaugh went to the bank to make a deposit.

In addition, although the jury could not consider Defendant Mason's statement to Special Agent Ewald that she went to the bank to make deposits for Defendant Murtaugh when he was busy with other matters for the truth of the matter asserted, the jury was free to consider that statement, together with the other evidence in the record, in making its determination as to whether Defendant Mason testified falsely before the grand jury when she answered, "No" to the question about whether she "ever" knew of Defendant Murtaugh going to the bank to make a deposit.

Viewing the evidence in its totality and drawing all reasonable inferences in favor of the Government, the Court concludes that there was sufficient evidence from which a reasonable juror could have found that the Government had proven each element of the charge against Defendant Mason beyond a reasonable doubt.  Accordingly, the Court **denies** Defendant Mason's motion for a judgment of acquittal.

**B.**      **Motions for a new trial**

### 1. Defendant Gilbert's motion

Defendant Gilbert relies on the same arguments to support her motion for a new trial as

those on which she relied to support her motion for a judgment of acquittal.  Reviewing all of the evidence in the record, the Court finds nothing that would warrant a finding that justice requires a new trial.  Furthermore, Defendant Gilbert has not pointed to any "exceptional circumstances" that would warrant such relief.  Accordingly, the Court **denies** Defendant Gilbert's motion for a new trial.

### 2. Defendant Mason's motion

Defendant Mason relies on the same arguments to support her motion for a new trial as those on which she relied to support her motion for a judgment of acquittal.  The Court finds that there is nothing in the record that would warrant a finding that justice requires a new trial, and Defendant Mason has not pointed to any "exceptional circumstances" that would warrant such relief.  Accordingly, the Court **denies** Defendant Mason's motion for a new trial.

### 3. Defendant Murtaugh's motion

Defendant Murtaugh argues that "[t]he weight of the evidence in this case 'preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand.'" *See* Defendant Murtaugh's Memorandum of Law at 3 (quoting *United States v. Reed*, 875 F.2d at 11).  Defendant Murtaugh further contends that the jury should have acquitted him on all tax counts based solely on the testimony of Klaus Baasch, Defendant Murtaugh's accountant.  *See id.* Defendant Murtaugh claims that Mr. Baasch repeatedly testified that he made serious errors in the preparation of Defendant Murtaugh's tax returns, admitted that his "frustration [concerning the Murtaugh records] clouded his professional judgment," and admitted that "he had the

necessary documents to accurately prepare the returns including (a) the cash receipts ledger . . . which listed 12 of the 15 scrap sales checks in 2004; and, (b) his own 1997 and 1998 workpapers . . . which showed that the property at Pierrepont Manor generated rental income." *See id.* at 3. In addition, Defendant Murtaugh states that "the testimony of office-worker Dawn DelaCruz, as corroborated by Exhibit D-1, 37, showed that Mr. Baasch requested and received the Murtaugh *personal* bank statements which included the rental income and a substantial number of the income checks from scrap sales." *See id.* Defendant Murtaugh asserts that, "[g]iven these facts and the instructions requiring the jury to acquit if the defendant relied on his accountant (after providing him with all material facts available to him), the jury should have acquitted [Defendant] Murtaugh on all the tax counts." *See id.* at 4.

Alternatively, Defendant Murtaugh contends that the acquittals on Counts One through Five required the jury to acquit on Counts Six through Eleven. *See id.* at 4. Defendant Murtaugh explains that "[t]he jury acquitted [him] completely with respect to the 2001 and 2002 returns (Counts One through Five), finding that the [G]overnment had not proved beyond a reasonable doubt that *any* of the income from scrap sales, rental income at Pierrepont Manor or rental income at West Monroe was willfully and knowingly omitted from the individual and corporate returns for the years 2001 and 2002." *See id.* However, "the jury turned right around and convicted on the counts relating to the 2003 and 2004 returns even though the income allegedly omitted on the 2001 and 2001 [sic] returns derived from the same sources as the income allegedly omitted on the 2003 and 2004 returns." *See id.* According to Defendant Murtaugh, "[t]his verdict is more than just inconsistent; it is substantially against the weight of the evidence . . . ." *See id.*

With respect to the scrap sales, Defendant Murtaugh contends that, "[b]ased on the verdict on Counts One through Five and the clear lack of supporting evidence, the jury could not have convicted [him] based on the omission of income from scrap sales in 2003 and 2004." *See id.* (footnote omitted).  Furthermore, Defendant Murtaugh claims that "[t]here were scrap sales checks unreported in 2001 . . . but the jury acquitted on the counts relating to 2001.  There was no significantly different evidence presented concerning scrap sales income as between 2001 and 2003/2004 which would cause the jury to acquit on this issue (scrap sales) in 2001 and convict with respect to scrap sales in 2003 and 2004." *See id.* at 5.  In fact, Defendant Murtaugh argues that "the evidence was even stronger that Mr. Baasch should have known about the scrap sales checks in 2004 based on his admission that he possessed the cash receipts ledger which contained 12 of 15 scrap sales checks in 2004. . . ." *See id.*  Therefore, Defendant Murtaugh asserts that "[i]t is entirely reasonable to conclude that the jury did not convict [him] based on unreported scrap sales in 2003 and 2004 [and] [t]hus, verdicts based on omitted income from scrap sales could not have formed the basis for the guilty verdicts on Counts Six through Eleven." *See id.*

On the other hand, Defendant Murtaugh acknowledges that "the jury could have convicted based on the omission of rental income for the years 2003 and 2004, [however, he asserts that] there is little, if any, evidence supporting such a conviction." *See id.*  Defendant Murtaugh explains further that "[t]here are rental income checks unreported in 2001 and 2002, but the jury acquitted on those counts (Counts One through Five).  The only evidence indicating a change of circumstances between 2001/2002 and 2003/2004 is contained in the letters written to the tenants . . . in late 2002." *See id.*  Defendant Murtaugh contends that, although "[t]he jury

may have found that these letters were designed to hide the rental income from Mr. Baasch . . .

there was no evidence that [he] wrote those letters." *See id.* Furthermore, Defendant Murtaugh

asserts that "Mr. Baasch admitted that his 1997 and 1998 workpapers showed rental income from

Pierrepont Manor. . . . There was also testimony from Ms. DelaCruz corroborated by Exhibit 37

that Mr. Baasch possessed the personal bank statements for 2003 and 2004 which contained the

rental income." *See id.* at 5-6.  Furthermore, Defendant Murtaugh claims that, even if he wrote

the letters, "simply changing the payee of the rental income from a corporation to an individual

would have caused the payer of the rental income (if the payer was in business) to have to issue a

Form 1099 to the IRS in the name of the individual to whom the rent is paid.  This fact, if

anything, is evidence that [he] did not intend to hide the rental income; rather, he made it more

likely that the IRS and Mr. Baasch would discover this income." *See id.* at 6 (footnote omitted).

Therefore, Defendant Murtaugh asserts that, "if the jury verdicts on Counts Six through Eleven

were based on unreported rental income, they are against the substantial weight of the evidence

and call for a new trial in the interest of justice." *See id.*

Finally, Defendant Murtaugh asserts that a new trial is warranted because the jury failed

to follow the Court's instructions to begin its deliberations anew after the substitution of an

alternate juror for a sitting juror with the consent of all of the parties. *See id.* at 6.  The

substitution occurred at the end of the day on February 9, 2009; at 9:00 a.m. on the following

day, the jury sent a note to the Court asking questions about the proper method to arrive at a

verdict. *See id.*  Defendant Murtaugh contends that, because "deliberations began at 9:00 a.m.,

this note clearly indicated that the jury had not had time to 'begin its deliberations anew.'" *See id.*

Defendant Murtaugh asserts that "[i]t thus appears that the jury simply continued its deliberations

from the previous day without reviewing such deliberations with the alternate juror." *See id.* Therefore, Defendant Murtaugh argues that, "[p]articularly in light of the narrow verdicts rendered by the jury and the weak evidence in support of such verdicts, this clear violation of the court's instruction and the requirements of the law denied [him] (and the other defendants) a fair trial and warrants a new trial." *See id.* at 6-7.

Given Defendant Murtaugh's acknowledgement that "the jury could have convicted [him] based on the omission of the rental income for the years 2003 and 2004," it is difficult to determine what the basis for granting him a new trial would be.  Furthermore, although he asserts that the interests of justice require a new trial, Defendant Murtaugh has not pointed to any exceptional circumstances in this case that would warrant such relief.  He does not argue that the testimony that supports his conviction is "patently incredible," but, instead, appears to attempt to shift the blame for his wrongdoing to Mr. Baasch for his poor accounting practices.  However, Defendant Murtaugh does not claim, nor could he, that Mr. Baasch directed him, or anyone who worked for him, to write the letters to the tenants at Pierrepont Manor directing them to make their rent checks payable to Defendant Murtaugh rather than the business or that Mr. Baasch directed him to deposit these rent checks in his personal account rather than in the business account, or that Mr. Baasch had any reason to believe that he had changed his banking practices and, instead of depositing these checks in the business account, began to deposit them in his personal account.  Finally, although the Court can weigh the evidence and the credibility of the witnesses when considering a motion for a new trial, based on the evidence adduced at trial, the Court finds that there is no basis to disturb the jury's conclusions regarding the evidence and the reasonable inferences that the jury could have drawn from that evidence.

Finally, Defendant Murtaugh's argument that Jury Note #2 "clearly" indicates that the jury failed to follow the Court's instructions to begin its deliberations anew after the substitution of an alternate juror finds no support in the record.  Jury Note #2, which reads, "If we are not able to reach a unanimous decision on a particular count, what do we do?  Does that constitute reasonable doubt?," indicates nothing more than that at least one of the jurors had a general question about the relationship between the need for unanimity and the legal concept of reasonable doubt.  There is nothing in Jury Note #2 that indicates that the jury was in the middle of its deliberations at the time that it posed this question.  It may very well be that the jury wanted the Court to explain the relationship between these two concepts before it began its deliberations. In fact, it could have been the alternate juror who raised this question or the question could have resulted from the jury's deliberations the day before, and the jury decided to pose the question to avoid any confusion before beginning its deliberations anew.  Whatever the reason for the question, there is nothing in the record to support Defendant Murtaugh's contention that Jury Question #2 indicates that the jury did not follow the Court's instructions.

Accordingly, for all of the above-stated reasons, the Court **denies** Defendant Murtaugh's motion for a new trial.


## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant Murtaugh's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is **DENIED**; and the Court further

**ORDERS** that Defendant Gilbert's motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or, in the alternative, for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is **DENIED**; and the Court further

**ORDERS** that Defendant Mason's motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure or, in the alternative, for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 19, 2009
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

-23-